# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ALISHA MONTGOMERY**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 11 C 365 |
| **CORINTHIAN COLLEGES, INC.** and **CORINTHIAN SCHOOLS, INC.**, d/b/a **EVEREST COLLEGE** and **OLYMPIA COLLEGE**, | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Compel Individual Arbitration and Stay the Proceedings. For the reasons contained herein, the Motion is granted.

### I. BACKGROUND

The thirty-three named Plaintiffs are current or former students in the "Medical Assisting" program at the Merrionette Park campus of Everest College. The school is owned and operated by Defendants Corinthian Colleges, Inc. and Corinthian Schools, Inc. (hereinafter, "Corinthian"). Plaintiffs brought the instant putative class action lawsuit accusing Corinthian of a deceptive marketing scheme that they claim has deceived thousands of students into pursuing an education that has little value. Plaintiffs claim that Corinthian deceived them about the program's accreditations, cost, and job placement rates. They allege, *inter alia*, that

Defendants charged them in excess of the contracted amount for tuition, falsified financial aid applications, and failed to offer certain courses listed in the curriculum and placed on their transcripts. Plaintiffs seek relief for breach of contract, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1, and unjust enrichment.

Defendants seek to compel individual arbitration of these claims based on agreements to arbitrate signed by the Plaintiffs. Twenty-eight Plaintiffs signed a six-page Enrollment Agreement and a five-page document titled "Enrollment Agreement Addendum and Disclosures." Each of the twenty-eight Plaintiffs initialed each paragraph of the addendum, which covered topics including placement, salaries, and financial aid. The addendum begins with this disclaimer:

> **Please take your time while you read the following information regarding your education program. Please ask us as many questions as you like. Do not sign until you fully understand and agree with each paragraph. Put your initials at the end of each paragraph indicating your understanding of, and agreement with, each item. When you have finished reading the entire form, please sign your name in the space provided.**

The arbitration provision appears on the last page of the addendum and provides, in relevant part:

> **AGREEMENT TO BINDING ARBITRATION AND WAIVER OF JURY TRIAL.**
> I agree that any dispute arising from my enrollment, no matter how described, pleaded, or styled, shall be

resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association under its Consumer Rules.

**Terms of Arbitration.**
1. Both I and the School irrevocably agree that any dispute between us shall be submitted to arbitration.
2. Neither I nor the School shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement. Both I and the school agree that filing a court action will cause damage to the other party. We agree that an appropriate measure of this damage includes the costs and attorney's fees actually incurred in compelling arbitration. Such damages shall be paid by the party who has filed an action in court within 30 days of the court's order compelling arbitration.
3. The costs of the arbitration filing fee, arbitrator's compensation and facilities fees shall be paid by the School, to the extent that the fees are greater that the applicable Court filing fee. The School shall not be solely responsible for arbitration costs beyond those for an individual student's claim.
4. I agree not to combine or consolidate any Claims with those of other students, such as in a class or mass action. *I may opt out of this no-consolidation provision by delivering a written statement to that effect received by the School within 30 days of my first execution of an Enrollment Agreement with the School.* (Emphasis in the original).
5. Any remedy available from a court under the law shall be available in the arbitration.
6. Nothing in this Agreement prohibits me from filing a complaint with the state regulatory agency.

**Procedure for Filing an Arbitration.**
1. I am strongly encouraged, but not required, to utilize the Grievance Procedure described in the Catalog, prior to filing an Arbitration.
2. If I desire to file an Arbitration, I should first contact the School's President, who will provide me with a copy of the AAA Consumer Rules. If I desire

>    to file an Arbitration, I should then contact the
>    AAA which will provide the appropriate forms and
>    detailed instructions. I should bring this
>    document to AAA.
> 3. I may, but need not be, represented by an attorney
>    in the arbitration.
>
> **Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules.**
> By my signature, I acknowledge that I understand that
> both I and the School are irrevocably waiving rights to
> trial by jury, and are selecting instead to submit any
> and all claims to the decision of an arbitrator instead
> of a court. I understand that the award of the
> arbitrator will be binding and not merely advisory.

The twenty-eight Plaintiffs who executed this version of the Arbitration Agreement initialed every paragraph of these disclosures. Eight Plaintiffs, including three who signed the above Agreement, signed a second version of the Arbitration Agreement. In that version, the acknowledgment of waiver of trial by jury appeared in the body of the five-page enrollment agreement, directly above Plaintiffs' signatures. The agreement to arbitrate is similar to the one described above, but this version did not include a class-action waiver.

## II. ANALYSIS

Defendants' Motion to Compel Arbitration is brought pursuant to FED. R. CIV. P. 12(b)(1) because it contends that the court lacks subject-matter jurisdiction due to the arbitration agreement. *Lamb v. Gen. Elec. Consumer & Indus.*, 6 CV 216, 2006 WL 2228962, at *1 (N.D. Ind. Aug. 3, 2006). On a Rule 12(b)(1) motion, the Court may consider matters beyond the allegations in the complaint. *Falbe v.*

*Dell, Inc.*, 4 C 1425, 2004 WL 1588243, at *1 n.1 (N.D. Ill. July 14, 2004).

The Federal Arbitration Act ("FAA") governs the validity of agreements to arbitrate. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). Under the FAA, "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2. (emphasis added). As such, arbitration provisions may be invalidated by general contract defenses like unconscionability. *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). The court applies state law to determine the validity of an arbitration provision, but must keep in mind the federal policy favoring arbitrability of disputes. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 730-31 (7th Cir. 2005). The party opposing arbitration bears the burden of showing why a particular provision should not be enforced. *O'Quinn v. Comcast Corp.*, 10 C 2491, 2010 WL 4932665, at *2-3 (N.D. Ill. Nov. 29, 2010)(citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

Here, Plaintiffs contend the Arbitration Agreements should be invalidated because they are unconscionable under Illinois law. Although Plaintiffs argue the agreements as a whole are

unconscionable, they center their argument on the validity of the class-action waiver provision. As noted above, five of the named Plaintiffs signed only a version of the Agreement that did not contain a class-action waiver. However, Plaintiffs argue those agreements are likewise unconscionable because those Plaintiffs are similarly denied the ability to proceed on a class basis. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1775 (2010) (holding that a party may not be compelled to submit to class arbitration unless the parties actually agreed to such arbitration).

Under Illinois law, which both sides agree applies here, "a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Courts determine whether class-action waivers are unconscionable on a case-by-case basis. *Id.* at 278.

Here, Plaintiffs argue that the Arbitration Agreement, and the class-action waiver provision within it, is both procedurally and substantively unconscionable, so the Court will address both arguments.

### A. Procedural Unconscionability

Procedural unconscionability arises when a contract term is difficult to find, read, or comprehend. *Kinkel,* 857 N.E.2d at 264. The analysis also takes into account the disparity in bargaining

power between the parties. *Id.* The Illinois Supreme Court has said that procedural unconscionability boils down to "impropriety during the process of forming the contract depriving a party of a meaningful choice." *Id.* (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980)). Illinois courts consider: (1) the manner in which the contract was formed; (2) whether each party had a reasonable chance to understand the contract; (3) whether key terms were "hidden in a maze of fine print." *Frank's Maint. & Eng'g*, 408 N.E.2d at 410.

Plaintiffs contend the agreement is procedurally unconscionable because it is an adhesion contract due to the disparity in bargaining power between the parties and because the agreement was presented on a "take it or leave it" basis. *Williams v. Ill. State Scholarship Comm'n*, 563 N.E.2d 465, 487 (Ill. 1990). Additionally, Plaintiffs note that the enrollment agreement and addendum total eleven pages, and that the five-page addendum itself has thirty different provisions, including those related to arbitration. The majority of the Plaintiffs had at most a high-school education, so "to suggest they completely read the . . . document with all its legalese . . . and knew and understood the significance of a class action ban in an arbitration provision is suspect to say the least," Plaintiffs argue.

Defendants respond that Plaintiffs (at least those who signed the agreement with a class-action waiver) initialed every paragraph

of the arbitration agreement and signed at the bottom of the page. They contend that the agreements were written in plain language and argue that any procedural unconscionability was negated by the provision giving students thirty (30) days to opt out of the class-action waiver.

Plaintiffs' argument that they lacked bargaining power in comparison with Defendants holds some weight. Defendants own and operate a large for-profit educational enterprise, which according to the Complaint earned more than $1.7 billion in revenue through the third quarter of 2010. But the Court notes that form contracts like the ones at issue here "are a fact of modern life" even if the average consumer does not completely understand them. *Kinkel*, 857 N.E.2d at 266. Further, the arbitration provisions are neither difficult to read nor hidden in either version of the agreement. The headings of various provisions are in boldface and font is of a normal size. Nor were the Enrollment Agreement and Addendums signed by the majority of the Plaintiffs unreasonably long at eleven pages. The same is true of the Agreement signed by eight of the Plaintiffs, which totals five pages, two of which contain the Arbitration Agreement. *See Brown v. Luxottica Retail N. Am. Inc.*, 09 C 7816, 2010 WL 3893820, at *1-3 (N.D. Ill. Sept. 29, 2010)(finding a dispute resolution agreement in the middle of a 51-page employee handbook was neither hidden nor buried). Defendants' employees had no obligation to explain the arbitration

provisions to Plaintiffs, and even if Plaintiffs did not read the provisions, they still can be bound by them. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997).

Plaintiffs additionally allege that one of them questioned a provision in the Addendum advising that the school does not guarantee employment, but was told by a recruiter that the provision was a formality and she was guaranteed a job. Pls.'s Comp. § 69. Accepting this allegation as true, it injects some degree of procedural unconscionability into the case. Misleading one of the parties about the significance of a contract term certainly amounts to impropriety in the negotiation of the contract. *See Kinkel*, 857 N.E.2d at 264 (noting that the procedural unconscionability analysis encompasses conduct during the negotiations).

But Plaintiffs do not allege they were misled about the arbitration provisions or the class-action waiver, and the Court agrees with Defendants that the opt-out provision here is significant to determining the existence of both procedural and substantive unconscionability. Any of the twenty-eight Plaintiffs who signed the more common version of the Arbitration Agreement could have opted out of the class-action waiver within thirty (30) days of the execution of the Enrollment Agreement with no effect on their enrollment. None did so. This undermines their argument that this was an adhesion agreement in which they were forced to

accept Defendants' terms. *See O'Quinn*, 2010 WL 4932665, at *5 (holding that opt-out provision in arbitration agreement "weighs heavily against a finding of procedural unconscionability"); *Pivoris v. TCF Fin. Corp.*, 07 C 2673, 2007 WL 4355040, at *4, 6 (N.D. Ill. Dec. 7, 2007)(finding fact that plaintiff could have opted out of arbitration with no consequences weighed against finding either procedural or substantive unconscionability).

Based on its review of the agreements and the negotiations between the parties, the Court does not find such a degree of procedural unconscionability as to render the class-action waiver or the arbitration agreements themselves invalid. *See Kinkel*, 857 N.E.2d at 266 (finding that some degree of procedural unconscionability was not enough to invalidate class-action waiver).

### B. Substantive Unconscionability

While procedural unconscionability concerns the negotiation and placement of a contract term, substantive unconscionability looks to the fairness of the term itself. *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995). Contract terms are substantively unconscionable when they are: (1) so one-sided as to be oppressive; (2) imbalanced in the rights and obligations they impose; and (3) when there is a significant cost-price disparity, which involves a comparison of the cost of bringing an arbitration proceeding versus the damages the plaintiff can expect to receive.

*Kinkel*, 857 N.E.2d at 267 (citing *Maxwell*, 907 P.2d at 58)). Under Illinois law, a class-action waiver will not be held substantively unconscionable if the plaintiff "had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim asserted in a cost-effective manner." *Kinkel*, 857 N.E.2d at 274. Here, as discussed above, those Plaintiffs who signed the version of the agreement with a class-action waiver had the opportunity to reject that term. The question then becomes whether the agreement allows the Plaintiffs to obtain a remedy for their claims in a cost-effective manner. The relevant inquiry is whether it is so expensive to vindicate a claim that the only reasonable way to obtain relief is to proceed on a class-action basis. *Kinkel*, 857 N.E. 2d at 275; *see Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (reasoning that "The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

Plaintiffs argue this is a case where the only reasonable way for them to obtain relief is through a class action. The amount in dispute is the tuition paid by each Plaintiff, or about $13,227.00. Plaintiffs argue this amount is insufficient for them to secure counsel, even though they also seek to recover attorneys' fees, costs, and punitive damages under the Consumer Fraud Act. They

contend that when a defendant engages in "a scheme to deliberately cheat large numbers of customers out of individually small sums of money," an agreement to arbitrate is substantively unconscionable. *Kinkel*, 857 N.E.2d at 271-72 (quoting *Discover Bank v. Super. Ct. of L.A.*, 113 P.3d 1100, 1110 (Cal. 2005)). Defendants, however, point out that at least one of the Plaintiffs is seeking to recover more than $27,000.00. Defendants contend that even at about $13,000.00 each, the amount of damages sought by Plaintiffs is far greater than the amount at stake in cases in which courts have found it would be cost-prohibitive to force plaintiffs to pursue their claims individually. The Court agrees.

Plaintiffs cite several cases from other states or circuits, including *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 855 (9th Cir. 2009), *cert. granted*, 78 USLW 3687 (U.S. May 24, 2010) (No. 09-893), in which the Ninth Circuit held that under California law an arbitration agreement containing a class-action waiver was unconscionable where the dispute was over a "predictably small" amount of damages, about $30 in tax charged on cell phones that were advertised as free. The Illinois cases relied on by Plaintiffs similarly involve damages much smaller than that at issue here.

In *Keefe v. Allied Home Mortg. Corp.*, 912 N.E.2d 310, 313 (Ill. App. Ct. 2009), for example, a borrower sued a mortgage broker for allegedly inflating the fees for certain services. The

broker sought to compel arbitration, but the plaintiff argued that a class-action waiver in the arbitration agreement made it cost-prohibitive to arbitrate her claim, and thus rendered the agreement unconscionable. *Id.* at 318. Accepting that argument, the Court reasoned, "[t]he plaintiff in this case has alleged that defendants charged her $50 for a service that actually cost $4. This amounts to a $46 claim." *Id.* at 319. Although the plaintiff sought punitive damages as well, the court noted that there was no guarantee she would receive them, and any punitive damage recovery would be limited by her actual damages. *Id.* Further, the agreement at issue in *Keefe* did not reveal the cost of arbitration to the plaintiff, but it likely was between $25 and $240. *Id.* The court found that when it factored in attorney fees and the cost of marshaling evidence, the cost of bringing the claim would exceed any potential recovery. *Id.*

Similarly, in *Kinkel*, the court found that a class-action waiver was substantively unconscionable where it would have cost each cell phone customer $125 to arbitrate a dispute over a $150 early-termination fee. *Kinked*, 857 N.E.2d at 267. The *Kinkel* Court also considered the fact that the costs of arbitration were not disclosed to the plaintiff. *Id.* And it noted that the nature of the claim was difficult for an individual customer to discern and litigate because it was based on an unreasonably large

liquidated damage provision in a cell phone contract. *Id.* at 267–68.

Here, the cost of arbitration is clear. Both versions of the arbitration agreement signed by Plaintiffs provide that Corinthian will pay for the costs of arbitration in excess of a court filing fee. Further, Plaintiffs' claim is essentially that they did not get what they paid for from Defendants or were charged in excess of what they agreed to pay. As the *Kinkel* court observed, this is the type of claim an average consumer can be expected to recognize without the assistance of counsel. *Id.*

Finally, and most importantly, it is far from clear that it would be cost-prohibitive for Plaintiffs to arbitrate their claims. Not only is the amount of damages at stake here relatively large compared to cases in which such arbitration agreements have been invalidated, but the Seventh Circuit has held that the party seeking to avoid arbitration bears the burden of providing "individualized evidence" that arbitration is cost-prohibitive. *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003); *see also O'Quinn*, 2010 WL 4932665, at \*6 (granting motion to compel arbitration where plaintiff failed to present evidence he was unable to pay costs of arbitration). Here, the Plaintiffs offer no such individualized evidence. The Court additionally notes that attorney's fees are recoverable under the Consumer Fraud Act, 815 ILCS 505/10a(c), and Corinthian's Arbitration Agreements

provide that any remedy available from a court also will be available in arbitration.

As such, the court finds that the class-action waiver and the Arbitration Agreements themselves are not substantively unconscionable.  Because the degree of procedural unconscionability present is not enough to invalidate the arbitration agreements, the case should proceed to arbitration.

## V. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion to Compel Individual Arbitration and Stay the Proceedings. **IT IS SO ORDERED.**

                                            Harry D. Leinenweber, Judge
                                            United States District Court

**DATE:** 3/25/2011